IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

EUGENE SCALIA, Secretary of Labor,
United States Department of Labor,[1]                    CASE NO. 1:19-cv-00660-AJ

       Plaintiff,

v.

LOCAL 230, AMERICAN POSTAL
WORKERS UNION,

       Defendant.

_____

**DECLARATION OF BRIAN A. PIFER**

I, Brian A. Pifer, am the Chief of the Division of Enforcement, Office of Labor-Management Standards ("OLMS"), United States Department of Labor ("Department").  The Department supervised an election of officers of the American Postal Workers Union, Local 230, ("APWU Local 230"), which was held on February 11, 2020, pursuant to a Stipulation of Settlement and Order entered October 21, 2019, by the Court ("the supervised election").

OLMS received three formal pre-election protests and three informal pre-election protests, which it investigated and resolved prior to certifying the supervised election, as described below.  The supervised election included new elections for the positions of President, Executive Vice-President, Secretary-Treasurer, Clerk Craft Director, Maintenance Craft Director, Motor Vehicle Craft Director, Nashua Logistics and Distribution Center Director, Area

---

[1]As of September 30, 2019, Eugene Scalia, who is serving as the Secretary of Labor, is automatically substituted as the Plaintiff in place of former Secretary R. Alexander Acosta in his official capacity in accordance with Rule 25(d) of the Federal Rules of Civil Procedure.

1

Business Agent A, Area Business Agent B, Area Business Agent C, Secretary,[2] and Legislative Director.

## A. Election Process

On November 26, 2019, written notices of nominations were mailed by First-Class U.S. Mail to the membership and worksites to be posted on the union bulletin board, providing at least 30 days' notice, as required by paragraph 8, subsections b and c of the Stipulation of Settlement and Order.  An announcement of the nominations process was also made during the union's regularly scheduled monthly membership meeting on December 4, 2019, as required by paragraph 8.d of the Stipulation of Settlement and Order.

On January 5, 2020, APWU Local 230 conducted the nominations meeting during its regularly scheduled monthly membership meeting.  Two positions were contested: President and Secretary-Treasurer.  Seven positions had only one nominee, resulting in those nominees being deemed elected: Executive Vice-President,[3] Clerk Craft Director, Maintenance Craft Director, Motor Vehicle Craft Director, Nashua Logistics and Distribution Center Director, Area Business Agent B, and Legislative Director.  Three positions had no nominees: Area Business Agent A, Area Business Agent C, and Secretary.

---

[2] In the course of coordinating the logistics of the supervised election, Plaintiff and Defendant became aware that the October 21, 2019 Stipulation of Settlement and Order mandated an election for one position that had been abolished (Human Resources Director), and did not mandate an election for a different union office (Secretary).  Plaintiff had sufficient authority under the LMRDA and the Court's Stipulation of Settlement and Order to ensure that the proper offices appeared on the supervised election ballot. *See* 29 U.S.C. § 482(b) (supervised election shall be "in accordance with the provisions of [LMRDA title IV] and such rules and regulations as the Secretary [of Labor] may prescribe"); Order □ 8.i ("All decisions as to the interpretation or application of Title IV of the LMRDA, the APWU Constitution, and Local 230's constitution and bylaws relating to the supervised election are to be determined by the Secretary . . . .").  Defendant did not object to removing the office of Human Resources Director from the ballot and including the office of Secretary.

[3] While this position initially had two candidates, one withdrew in writing immediately after the nominations meeting, resulting in the remaining candidate being deemed elected.

A meeting for candidates to discuss campaign rules and prohibitions, inspection of the mailing list, distribution of campaign literature, and rules regarding observers was held directly following the January 5, 2020 nominations meeting.

On January 15, 2020, the Election Committee mailed the election notice to be posted on union bulletin boards at all postal worksites in APWU Local 230's jurisdiction. Along with the notice, the committee mailed one-page campaign flyers submitted by two candidates, as permitted in the election rules.

On January 21, 2020, the notice of election and ballots were mailed to all members at their last known home address. A total of 769 ballot packages were mailed to voting members. Twelve notices of election without ballots were also mailed to nonvoting members. Twenty replacement ballots and two new ballots were mailed to members based on returned undeliverable ballots and ballot requests made to APWU Local 230 Election Chairman Mike Egan and Department of Labor Election Supervisor Laura Corbin.

On February 11, 2020, Election Supervisor Corbin and Election Chairman Egan retrieved 344 ballots from the Tyngsboro, Massachusetts Post Office. Election Supervisor Corbin transported the ballots to the union office in Manchester, New Hampshire. The returned envelopes were verified for voter eligibility. During this process, ten ballots were voided. Of those, five were original ballots for which replacement ballots had been submitted; four did not include voter identification information, which prevented voter eligibility from being determined; and one was identified as a retiree who did not pay full dues and was ineligible to vote.

Accordingly, 334 ballots were counted for the positions of President and Secretary-Treasurer. Dana Coletti was elected APWU Local 230 President by a margin of 224 votes.

3

David Webster was elected APWU Local 230 Secretary-Treasurer by a margin of 163 votes. The complete results were as follows:

| President | Total |
|---|---|
| Dana Coletti | 278 |
| John Taddeo | 54 |
| Voided | 1 |
| No Vote | 1 |
| | |
| **Secretary-Treasurer** | |
| David Webster | 245 |
| Laura McGrath | 82 |
| Voided | 2 |
| No Vote | 5 |

APWU Local 230 published the election results on the union's website and mailed them to worksites for posting on the union bulletin boards.  The winning candidates began their terms of office on March 23, 2019, in accordance with paragraph 8.h of the Stipulation of Settlement and Order.

### B.  Election Protests

Election Supervisor Corbin received three formal written protests and three informal protests prior to the ballot tally.

**First Formal Protest:**  On December 9, 2019, Election Supervisor Corbin received an email protest from a member alleging that presidential candidate John Taddeo canvassed for votes on the workroom floor at the Manchester Postal Facility.

**Response:**  Section 401(g) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 481(g), provides in pertinent part that "no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of" the LMRDA.  The Department's interpretive regulations provide that "campaigning by union stewards on company time with the approval of the employer would

violate section 401(g) . . . ." 29 C.F.R. § 452.78; *see also Solis v. United Steelworkers Local 9477*, 798 F. Supp. 2d 701, 704 (D. Md. 2011) ("*any* use of employer resources to promote a candidate's campaign is prohibited") (emphasis in original).

Election Supervisor Corbin investigated the allegation that Mr. Taddeo campaigned while on duty. The investigation revealed that Mr. Taddeo was at the Manchester facility for a two-day training class. He walked across the workroom floor with a coworker and responded affirmatively to questions about whether he was running for union president. There was no evidence provided that Mr. Taddeo campaigned while at the Manchester facility. Therefore, the Department concluded no violation of Section 401(g) occurred.

**Second Formal Protest:** On January 22, 2020, Election Supervisor Corbin received an email protest from a member alleging that Mr. Taddeo independently mailed a one-page candidate flyer along with a request to post the flyer on the union bulletin board, even though the supervised election rules had set an earlier deadline for candidates to submit flyers to the union so that the union could, on behalf of the candidates, mail flyers for posting on the bulletin boards.

**Response:** Section 402(b) of the LMRDA, 29 U.S.C. § 482(b), provides in pertinent part that supervised elections shall be conducted "in accordance with the provisions of [LMRDA title IV] and such rules and regulations as the Secretary [of Labor] may prescribe. . . ." Election Supervisor Corbin investigated the allegation that Mr. Taddeo violated the supervised election rules by independently mailing his own campaign flyer. The election rules allowed candidates to have flyers mailed at union expense, using the union mailing list, with official directions from the election committee to have the flyer posted. Candidates who wished to avail themselves of these procedures were required to submit their materials to the election committee by January 15, 2020. The rules were silent concerning mailings outside of the prescribed process. Election

5

Supervisor Corbin informed all candidates of this finding and individually contacted the only candidate who had not yet mailed a flyer to inform her that she could use her own resources to distribute materials. Accordingly, no violation of the LMRDA occurred.

**Third Formal Protest:** On February 3, 2020, Election Supervisor Corbin received an email protest from a member alleging that a Laconia, New Hampshire Postmaster campaigned in support of Mr. Taddeo in the workplace while on duty.

**Response:** As discussed above, Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits employer resources from promoting any candidacy. Election Supervisor Corbin investigated the allegation and concluded that the incident in question was an allegation regarding the previous election rather than the supervised election. Accordingly, the Department concluded no violation of Section 401(g) occurred.

**First Informal Protest:** On December 27, 2019, and on January 22 and February 6, 2020, Mr. Taddeo called Election Supervisor Corbin alleging that APWU Local 230 was harassing him by requesting his time sheets from the employer and pressuring the employer to limit Mr. Taddeo's overtime and use of a government vehicle.

**Response:** The Department's jurisdiction under Title IV of the LMRDA extends only to elections for union officers and the adequacy of removal procedures regarding union officers guilty of serious misconduct. *See* 29 U.S.C. § 481; *BLE Int'l. Reform Comm. v. Sytsma*, 802 F.2d 180, 189 (6th Cir. 1986). Election Supervisor Corbin investigated Mr. Taddeo's informal complaint and determined the matter was outside the jurisdiction of OLMS because it involved the employer-employee relationship and did not impact the campaign. Specifically, the matter involved whether the employer was crediting hours correctly. Furthermore, while Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), provides that every union member "shall have the right to

6

vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind," no violation of that provision occurred given that the conduct was unrelated to the election.

**Second Informal Protest:**  On January 20, 2020, Election Supervisor Corbin received an email from an election committee member advising that flyers supporting Mr. Taddeo were placed in the breakroom in the Manchester, New Hampshire postal facility in violation of the supervised election rules because Mr. Taddeo was not supposed to have access to that facility's breakroom.

**Response:**  Election Supervisor Corbin advised the election committee member that the presence of flyers in a breakroom Mr. Taddeo was not authorized to access was not necessarily a violation of the election rules because a supporter of Mr. Taddeo who was allowed to access the room may have placed flyers in the breakroom.  Later in the day, the election committee member informed Election Supervisor Corbin that another member may have seen a Taddeo supporter leave the flyers in the breakroom while on duty.  Election Supervisor Corbin advised that she would investigate the claim if the member who witnessed the incident filed a complaint that included the relevant facts.  Election Supervisor Corbin did not receive further communications or information on this issue.  Accordingly, the investigation did not uncover a violation of the LMRDA.

**Third Informal Protest:**  On January 24, 2020, Election Supervisor Corbin received an anonymous phone call advising that Dana Coletti's Facebook campaign page was directing union members to post photos of their ballots.

**Response:**  Section 401(b) of the LMRDA, 29 U.S.C. § 481(b), provides in pertinent part that "[e]very local labor organization shall elect its officers . . . by secret ballot . . . ."  Election

7

Supervisor Corbin visited Coletti's Facebook page and observed photos of five APWU Local 230 officers posing with their voted ballots and two posts soliciting voters to post pictures with their ballots.  The investigation established that a supporter of Coletti created the page.  The supporter removed the photos and solicitations at the request of Election Supervisor Corbin.  Furthermore, Election Supervisor Corbin and OLMS determined that the posted ballots would be voided.  The officers requested replacement ballots, which were received and counted at the ballot tally.  Accordingly, no violation of the LMRDA occurred which affected the outcome of the election.

### C.  Conclusion

The Department has concluded from its investigation of these election protests that APWU Local 230's February 11, 2020 election of officers, conducted under the Department's supervision, complied with Title IV of the LMRDA and was conducted, insofar as lawful and practicable, in accordance with APWU Local 230's constitution and bylaws and the LMRDA.  Therefore, the results of this supervised election should be certified by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 1st of April 2020, in the City of Washington, District of Columbia.

*Brian A. Pifer*

_____

Brian A. Pifer, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor